## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ASHLEY MOORE and GREG SAFIAN, | § § § | |
| Plaintiffs, | § § | C.A. No.: _____ |
| v. | § § | CLASS ACTION |
| DOORDASH, INC., | § § | JURY TRIAL DEMANDED |
| Defendant. | § § | |

### CLASS ACTION COMPLAINT

Plaintiffs Ashley Moore and Greg Safian ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class," as defined below), allege the following against Defendant DoorDash, Inc. ("DoorDash" or the "Company"), based upon personal knowledge with respect to themselves and on information and belief, and investigation of counsel, as to all other matters:

### INTRODUCTION

1.      Plaintiffs bring this class action against DoorDash for its unlawful practice of collecting sales tax from customers located in States that do not permit collection of sales tax, including Delaware, New Hampshire, and Montana (the "Tax-Free States").

2.      DoorDash is a nationwide on-demand food delivery company founded in 2013, which currently values itself at over $7 billion.  The Company provides customers with a web- or app-driven interface to order food delivery from local restaurants.

3.      DoorDash accounts for nearly 30% of the U.S. on-demand food delivery industry, which is a multi-billion dollar industry, and is second only to GrubHub.

DoorDash has hundreds of thousands of active users across the country, and has processed over 100 million orders between 2013 and 2018.

4.      DoorDash charges customers the actual cost of the food items selected by customers, plus a variety of fees and charges, including sales tax.

5.      DoorDash generates revenue through revenue-sharing agreements with participating restaurants as well as service fees and other charges paid by customers.

6.      DoorDash charges and collects sales tax from customers, including those located in Tax-Free States.

7.      DoorDash's practice of charging and collecting sales tax from customers located in Tax-Free States is plainly unlawful, unfair, and deceptive.

8.      Prior to completing an order on the DoorDash website or app, DoorDash provides customers with an overview of their order, including the amount of sales tax to be charged.  In reality, the amount of sales tax is simply a disguised fee to DoorDash, which DoorDash retains as revenue.  Customers in Tax-Free States pay this charge under the incorrect impression that it is a lawful, required tax charge, when it is not.

9.      DoorDash has reaped millions of dollars in unlawful sales tax charges from customers in Tax-Free States.

10.     Plaintiffs, individually and on behalf of the Class, seek compensatory, statutory, and punitive damages, injunctive relief, declaratory relief, penalties, and all other available forms of relief to remedy DoorDash's violations of law.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), *et seq.*, because this is a class action in which

the matter in controversy exceeds the sum of $5,000,000, DoorDash is a citizen of a state different from at least one class member, and there are more than 100 class members.

12.     This Court has personal jurisdiction over DoorDash because it is registered to conduct business, and in fact conducts business, in the State of Delaware.  DoorDash is incorporated under the laws of the State of Delaware.

13.     Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b), since certain causes of action arose in this District, the unlawful conduct took place, in part, in this District, and DoorDash resides in this District.

## PARTIES

14.     Plaintiff Ashley Moore is a resident and citizen of the State of Delaware. Plaintiff Moore has used DoorDash's services in the State of Delaware, and paid sales tax on food delivered in the State of Delaware, due to DoorDash's unlawful practices.

15.     Plaintiff Greg Safian is a resident and citizen of the State of Delaware. Plaintiff Safian has used DoorDash's services in the State of Delaware, and paid sales tax on food delivered in the State of Delaware, due to DoorDash's unlawful practices.

16.     Defendant DoorDash, Inc. is a Delaware corporation with its headquarters in San Francisco, California.  DoorDash provides food delivery services in all 50 states through its web- or app-driven consumer interface.  As of February 2019, DoorDash claims to be valued at over $7 billion.

## FACTUAL ALLEGATIONS

17.     DoorDash provides on-demand food delivery services to customers in all 50 states.

18.     DoorDash customers use a website (doordash.com) or proprietary mobile app to place orders for food delivery from local restaurants.

19.     DoorDash drivers, or "Dashers," are assigned customer orders by DoorDash, collect the customer's food order from the local restaurant, and deliver the food order to the customer's address.

20.     DoorDash charges customers for (1) the actual cost of the food order, plus (2) a service fee, (3) a delivery fee, (4) an optional driver tip, and (5) sales tax.

21.     State sales tax rates vary by state.  However, the States of Delaware, New Hampshire, and Montana have sales tax rates of 0%.

22.     The sales tax rate for meals consumed on-premises in the State of New Hampshire is 9%.  DoorDash customers—who uniformly receive delivery from DoorDash "Dashers"—do not consume food orders on-premises.

23.     The remaining Tax-Free States impose no sales taxes on prepared foods or meals, regardless of whether consumption occurs on- or off-premises.

24.     Accordingly, DoorDash is not permitted to collect sales tax amounts from consumers in the Tax-Free States.

25.     The States of Oregon and Alaska also have sales tax rates of 0%, and DoorDash appears to refrain from charging sales tax to Oregon and Alaska customers.

26.     Plaintiff Moore placed a food delivery order through DoorDash on or around January 4, 2019, in Wilmington, Delaware, from Five Guys Restaurant, with a delivery address located in Wilmington, Delaware.

27.     DoorDash collected a total of $33.82 from Plaintiff Moore for this order, including $25.95 in charges for food.  The balance of the charges were for DoorDash's

service fee ($2.60), a driver tip ($2.00), delivery charge ($1.00 after discount), and sales tax ($2.27).

28.     DoorDash's $2.27 "sales tax" charge implies an effective sales tax rate of 8.75%.

29.     Plaintiff Moore placed a food delivery order through DoorDash on or around January 10, 2019, in Wilmington, Delaware, from Five Guys Restaurant, with a delivery address located in Wilmington, Delaware.

30.     DoorDash collected a total of $14.81 from Plaintiff Moore for this order, including $10.79 in charges for food.  The balance of the charges were for DoorDash's service fee ($1.08), a driver tip ($1.00), delivery charge ($1.00 after discount), and sales tax ($0.94).

31.     DoorDash's $0.94 "sales tax" charge implies an effective sales tax rate of 8.71%.

32.     Plaintiff Safian placed a food delivery order through DoorDash on or around March 26, 2019, in Smyrna, Delaware, from Golden Bowl Chinese Restaurant, with a delivery address located in Clayton, Delaware.

33.     DoorDash collected a total of $31.11 from Plaintiff Safian for this order, including $20.95 in charges for food.  The balance of the charges were for DoorDash's service fee ($3.14), a driver tip ($5.19), and sales tax ($1.83).

34.     DoorDash's $1.83 "sales tax" charge implies an effective sales tax rate of 8.74%.

35.     On information and belief, DoorDash's practice of unlawfully collecting sales tax charges is not limited to customers in Delaware, but also includes customers in New Hampshire and Montana.

36.     For example, on or around March 13, 2019, a forum user posted on reddit.com a thread called, "WARNING: DoorDash charging sales tax in Montana," which reproduces a Montana-based customer's interaction with DoorDash customer service concerning the Company's unlawful collection of sales tax in the State of Montana.  *See* www.reddit.com/r/doordash/comments/b0rdgo/warning_doordash_charging_sales_tax_in_montana/.

37.     According to the forum post, a DoorDash representative confirmed the Company's knowledge that the States of Delaware, Montana, and New Hampshire do not allow merchants to collect sales tax charges from customers.  Nevertheless, DoorDash continues to do so.

38.     Prior to filing this action, Plaintiffs independently confirmed that DoorDash orders to exemplar addresses in the States of New Hampshire (N. State St., Concord, NH) and Montana (N. Rodney St., Helena, MT), result in unlawful sales tax charges.

39.     On information and belief, the total amount of money unlawfully obtained by DoorDash in the form of "sales tax" charges to customers in Tax-Free States exceeds $5,000,000.

40.     This allegation is based on, *inter alia*, the facts that DoorDash charged Plaintiffs effective sales tax rates of up to 8.75%, that DoorDash has a large nationwide customer base of at least several hundred thousand active users and processes tens of

millions of orders per year, and that DoorDash accounts for nearly 30% of the multi-billion dollar U.S. on-demand food delivery industry.

41.     DoorDash's practice of collecting sales tax charges from customers in Tax-Free States is unfair because it results in monetary losses to customers, who have no way of placing their orders while avoiding such losses, and there is no corresponding benefit to consumers from DoorDash's practice.

42.     DoorDash's practice of collecting sales tax charges from customers in Tax-Free States is deceptive because it has a tendency to deceive reasonable consumers.  A reasonable consumer in a Tax-Free State would not expect DoorDash to charge for sales tax in a Tax-Free State.

## **DOORDASH'S TERMS OF USE**

43.     DoorDash's terms of use ("TOU") purport to require binding individual (non-class) arbitration of any disputes between it and customers, as well as to waive the right of customers to participate in class actions against DoorDash.

44.     DoorDash customers are not required to review the TOU at any time, including at the creation of their account or upon the placement of an order.

45.     DoorDash customers are not required to check a box, sign, initial, or otherwise affirmatively consent to the TOU or the arbitration and class waiver provisions contained therein.

46.     Instead, customers must independently navigate the website to locate the TOU, and review the TOU to identify the arbitration and class waiver provisions.

47.     Prior to opening a DoorDash account, customers are given the option of signing in with an existing Google or Facebook account, or creating a new login for DoorDash.

48.     Buried at the bottom of this initial screen, under DoorDash, Google, and Facebook logos and dialog boxes for customers' names, addresses, telephone numbers, and email addresses, is a small typeface statement reading: "By clicking Sign up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement."  Hyperlinks to the TOU and a privacy statement are embedded in this text. The same small text, beneath the same branded graphics and dialog boxes for name, address, email, and phone number, appears at the bottom of the "Sign Up" splash screen in the DoorDash mobile app.

49.     There is no separate dialog box that must be checked in order to proceed, no requirement to open the links in order to proceed, and no other means of affirming that customers have opened or read the TOU in order to proceed with use of the DoorDash service.  This is true of both the DoorDash web platform and the DoorDash mobile app.

50.     Nor is there any indication on this initial screen (on either the web platform or the app) that the TOU contains arbitration or class waiver provisions.  The only webpage indicating that the TOU contains arbitration and class waiver provisions is the TOU itself.

51.     DoorDash permits customers to use its website and app, sign up for an account, and place orders using the website or app without ever affirmatively indicating acceptance of the TOU, or indeed, even reviewing the contents of the TOU.

52.     DoorDash does not require customers to read the TOU, or otherwise call attention to the arbitration or class waiver provisions contained therein, prior to placing an order for food delivery and incurring a charge.

53.     Because the arbitration and class waiver provisions are not reasonably available to customers, but are concealed, they are unenforceable "browsewrap" terms.

54.     Because the TOU, and the arbitration and class waiver provisions it contains, are not reasonably conspicuous to consumers, but are linked, in small and inconspicuous typeface, in sections of the webpage (or app) that users are unlikely to see, DoorDash customers, including Plaintiffs, were not on notice of the purported requirement to arbitrate and to waive participation in class actions.

55.     Accordingly, Plaintiffs and the other members of the Class did not assent to the TOU or the arbitration and class waiver provisions therein.

## CLASS ACTION ALLEGATIONS

56.     Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), Plaintiffs seek certification of the following Class:

> All persons in a Tax-Free State who paid sales tax to DoorDash on a food delivery order.

57.     In the alternative, Plaintiffs seek certification of the following subclasses:

> *Delaware Subclass*: All persons in the State of Delaware who paid sales tax to DoorDash on a food delivery order.

> *New Hampshire Subclass*: All persons in the State of New Hampshire who paid sales tax to DoorDash on a food delivery order.

> *Montana Subclass*: All persons in the State of Montana who paid sales tax to DoorDash on a food delivery order.

58.     Plaintiffs reserve the right to revise the definitions of the Class and/or Subclasses based upon information learned through discovery.

59.     Excluded from the Class and Subclasses are DoorDash and any entity in which DoorDash has a controlling interest, and its officers, directors, legal representatives, successors, subsidiaries, and assigns.  Also excluded from the Class and Subclasses are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

60.     *Numerosity*.  The members of the Class and Subclasses are so numerous and geographically dispersed that individual joinder of all members is impracticable.  Plaintiffs are informed and believe that there are thousands of Class members.  Those individuals' names and addresses are available from DoorDash's records, and members of the Class and Subclasses may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.  On information and belief, there are at least thousands of members of each Subclass, making joinder of all Subclass members impracticable for the same reasons.

61.     *Commonality and Predominance*.  This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class or Subclasses, including, without limitation:

   a.  Whether DoorDash collected sales tax from customers located in Tax-Free States;

   b.  Whether DoorDash intentionally violated the law by collecting sales tax from customers located in Tax-Free States;

   c.  Whether DoorDash's description of a charge as "sales tax" to customers located in Tax-Free States was unfair or deceptive;

   d.  Whether, as a result of DoorDash's conduct, Plaintiffs and other members of the Class and Subclasses have been injured;

e. Whether, as a result of DoorDash's conduct, Plaintiffs and other members of the Class and Subclasses are entitled to damages, injunctive relief, declaratory relief, or other relief, and if so, the nature of such relief.

62. *Typicality*. Plaintiffs' claims are typical of the claims of other members of the Class and Subclasses because, among other things, all members of the Class and Subclasses were comparably injured through DoorDash's uniform collection of sales tax amounts as described above. The claims of Plaintiffs and other members of the Class and Subclasses arise out of the same nucleus of operative facts and are based on the same legal theories.

63. *Adequacy of Representation*. Plaintiffs are adequate class representatives because they will fairly and adequately protect the other members of the Class and Subclasses' interests and because their interests do not conflict with the Class and Subclasses' interests. Plaintiffs have retained counsel competent and experienced in complex commercial and class action litigation and intend to vigorously prosecute this action. The interests of the other members of the Class and Subclasses will be fairly and adequately protected by Plaintiffs and their counsel.

64. *Declaratory and Injunctive Relief*. The prosecution of separate actions by individual members of the Class and Subclasses would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and Subclasses that would establish incompatible standards of conduct for DoorDash. Such individual actions would create a risk of adjudications that would be dispositive of the interests of other members of the Class and Subclasses and impair their interests. DoorDash has acted and/or refused to act on grounds generally applicable to the members of the Class and Subclasses, making final injunctive relief or corresponding declaratory relief appropriate.

65.     *Superiority*.  Plaintiffs and the other members of the Class and Subclasses have all suffered and will continue to suffer harm and damages as a result of DoorDash's unlawful and wrongful conduct.  A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' and other members of the Class and Subclasses' claims.  While substantial, the damages suffered by each individual Class and Subclass member do not justify the burden and expense of individual prosecution of the complex and extensive litigation required by DoorDash's conduct.  Even if members of the Class and Subclasses themselves could afford individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation would increase the delay and expense to all parties and the court system given the complex legal and factual issues of this case.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT ONE

### VIOLATION OF DELAWARE CONSUMER PROTECTION ACT

### 6 *Del C.* §§ 2511, *et seq.*

66.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-65 as if fully set forth herein.

67.     Plaintiffs bring this claim on behalf of the Class or, in the alternative, on behalf of the Delaware Subclass.

68.     The Delaware Consumer Protection Act, 6 *Del C.* §§ 2511, *et seq.* (the "DCPA"), "protect[s] consumers … from unfair or deceptive merchandising practices in the conduct of any trade or commerce in part or wholly within [Delaware]."

69. The DCPA specifically prohibits "[t]he act, use or employment by any person of any deception [or] false pretense … in connection with the sale … of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby[.]"

70. DoorDash is a "person" as defined by the DCPA. 6 *Del. C.* § 2511(7).

71. DoorDash sells "merchandise" to customers as defined by the DCPA, namely, foods ordered through its web- or app-driven consumer interface. 6 *Del. C.* § 2511(6).

72. Alternatively, DoorDash's food-ordering and delivery services are "merchandise" as defined by the DCPA. *Id.*

73. DoorDash's sales of merchandise (whether foods or food-ordering and delivery services) are "sales" as defined by the DCPA. 6 *Del. C.* § 2511(8).

74. DoorDash violated the DCPA by charging consumers and collecting sales tax on orders in the State of Delaware, which has no sales tax.

75. Alternatively, or in addition, DoorDash violated the DCPA by deceiving consumers, or selling merchandise on the basis of a false pretense, in that it collected a fee for itself under the guise of a "sales tax" charged to consumers in the State of Delaware.

76. Plaintiffs and the other members of the Class and/or Delaware Subclass have been damaged in amounts to be proven at trial.

77. Plaintiffs and the other members of the Class and/or Delaware Subclass seek compensatory damages, restitution, injunctive relief, civil penalties, statutory penalties, and declaratory relief to remedy DoorDash's violations of the DCPA, as well as attorneys' fees and costs.

78.     Plaintiffs and the other members of the Class and/or Delaware Subclass further seek an award of punitive damages because, as alleged above, DoorDash's practice of collecting sales tax in Tax-Free States was carried out knowingly and willfully, or with reckless indifference to its customers' rights, as evidenced by the fact that other DoorDash customers have notified DoorDash of the wrongful and injurious nature of the practice and DoorDash nevertheless continued to carry out the practice.

## COUNT TWO

## VIOLATION OF DELAWARE DECEPTIVE TRADE PRACTICES ACT

### 6 *Del C.* §§ 2531, *et seq.*

79.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-65 as if fully set forth herein.

80.     Plaintiffs bring this claim on behalf of the Class or, in the alternative, on behalf of the Delaware Subclass.

81.     The Delaware Deceptive Trade Practices Act, 6 *Del C.* §§ 2531, *et seq.* (the "DDTPA"), broadly prohibits "deceptive trade practice[s]," including any conduct that causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, certification, affiliation, connection, or association of goods or services, and any other conduct that creates a likelihood of confusion or misunderstanding.

82.     DoorDash violated the DDTPA by charging consumers and collecting sales tax on orders in the State of Delaware, which has no sales tax.

83.     Alternatively, or in addition, DoorDash violated the DDTPA by deceiving consumers, or selling merchandise on the basis of a false pretense, in that it collected a fee for itself under the guise of a "sales tax" charged to consumers in the State of Delaware,

which has a tendency to cause confusion or misunderstanding as to the nature, origin, and legitimacy of the sales tax charge.

84.     Plaintiffs and the other members of the Class and/or Delaware Subclass have been damaged in amounts to be proven at trial.

85.     Plaintiffs and the other members of the Class and/or Delaware Subclass seek injunctive relief to remedy DoorDash's violations of the DDTPA, as well as an order trebling any and all damages awarded under the DCPA, the common law, or other claims, and attorneys' fees and costs.

## COUNT THREE

## VIOLATION OF NEW HAMPSHIRE CONSUMER PROTECTION ACT

### 31 N.H. Rev. Stat. Ann. §§ 358-A, *et seq.*

86.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-65 as if fully set forth herein.

87.     Plaintiffs bring this claim on behalf of the Class or, in the alternative, on behalf of the New Hampshire Subclass.

88.     The New Hampshire Consumer Protection Act, 31 N.H. Rev. Stat. Ann. §§ 358-A, *et seq.* (the "NHCPA"), prohibits "use [of] any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within [New Hampshire]."

89.     DoorDash is a "person" as defined by the NHCPA.  31 N.H. Rev. Stat. Ann. § 358-A:1(I).

90.     DoorDash is engaged in "trade" and "commerce" as defined by NHCPA. 31 N.H. Rev. Stat. Ann. § 358-A:1(II).

91.    DoorDash violated the NHCPA by charging consumers and collecting sales tax on orders in the State of New Hampshire, which has no sales tax on foods or meals consumed anywhere other than the premises of the restaurant that sold the food or meal.

92.    Alternatively, or in addition, DoorDash violated the NHCPA by deceiving consumers, in that it collected a fee for itself under the guise of a "sales tax" charged to consumers in the State of New Hampshire.

93.    Plaintiffs and the other members of the Class and/or New Hampshire Subclass have been damaged in amounts to be proven at trial.

94.    Plaintiffs and the other members of the Class and/or New Hampshire Subclass seek compensatory damages or, if compensatory damages amount to less than $1,000 per class member, statutory damages in the amount of $1,000 per class member pursuant to N.H. Rev. Stat. § 358-A:10(I), as well as restitution, injunctive relief, civil penalties, and declaratory relief to remedy DoorDash's violations of the NHCPA, as well as attorneys' fees and costs.

95.    DoorDash's use of unfair methods of competition and deceptive trade practices, as alleged herein, constitute willful and knowing violations of the NHCPA. Accordingly, Plaintiffs and the other members of the Class and/or New Hampshire Subclass seek an award of three times the amount of compensatory or statutory damages awarded pursuant to N.H. Rev. Stat. § 358-A:10(I).

96.    Plaintiffs and the other members of the Class and/or New Hampshire Subclass further seek an award of punitive damages because, as alleged above, DoorDash's practice of collecting sales tax in Tax-Free States was carried out knowingly and willfully, or with reckless indifference to its customers' rights, as evidenced by the fact that other

DoorDash customers have notified DoorDash of the wrongful and injurious nature of the practice and DoorDash nevertheless continued to carry out the practice.

## COUNT FOUR

### VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT

### Mont. C. Ann. §§ 30-14-101, *et seq.*

97.     Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-65 as if fully set forth herein.

98.     Plaintiffs bring this claim on behalf of the Class or, in the alternative, on behalf of the Montana Subclass.

99.     The Montana Unfair Trade Practices and Consumer Protection Act, Mont. C. Ann. §§ 30-14-101, *et seq.* (the "MUTPCPA"), prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]"

100.    DoorDash is a "person" as defined by the MUTPCPA.  Mont. C. Ann. § 30-14-102(6).

101.    DoorDash is engaged in "trade" and "commerce" as defined by MUTPCPA. Mont. C. Ann. § 30-14-102(8).

102.    Plaintiffs are "consumers" as defined by MUTPCPA.  Mont. C. Ann. § 30-14-102(1).

103.    DoorDash violated the MUTPCPA by charging consumers and collecting sales tax on orders in the State of Montana, which has no sales tax.

104.    Alternatively, or in addition, DoorDash violated the MUTPCPA by deceiving consumers, in that it collected a fee for itself under the guise of a "sales tax" charged to consumers in the State of Montana.

105.    Plaintiffs and the other members of the Class and/or Montana Subclass have been damaged in amounts to be proven at trial.

106.    Plaintiffs and the other members of the Class and/or Montana Subclass seek compensatory damages or, if compensatory damages amount to less than $500 per class member, statutory damages in the amount of $500 per class member pursuant to Mont. C. Ann. § 30-14-133(1), as well as restitution, injunctive relief, civil penalties, and declaratory relief to remedy DoorDash's violations of the MUTPCPA, as well as attorneys' fees and costs.

107.    Plaintiffs and the other members of the Class and/or Montana Subclass further seek statutory damages of $1,000 to remedy DoorDash's violations of the MUTPCPA, pursuant to Mont. C. Ann. § 30-14-222(2)(a).

108.    Plaintiffs and the other members of the Class and/or Montana Subclass further seek an award of punitive damages because, as alleged above, DoorDash's practice of collecting sales tax in Tax-Free States was carried out knowingly and willfully, or with reckless indifference to its customers' rights, as evidenced by the fact that other DoorDash customers have notified DoorDash of the wrongful and injurious nature of the practice and DoorDash nevertheless continued to carry out the practice.

## COUNT FIVE

## BREACH OF CONTRACT AND OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

109.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1-65 as if fully set forth herein.

110.    Plaintiffs bring this claim on behalf of the Class.

111.    Plaintiffs and the other members of the Class purchased food and food delivery services from DoorDash via its website and/or mobile app.

112.    These transactions constituted contracts for the purchase of such food and food delivery services.

113.    Implied in each contract was an understanding that DoorDash would abide by the governing law in the Tax-Free States and not collect sales tax on the purchase of such food and food delivery services in these States.

114.    DoorDash breached its contracts with Plaintiffs and the other members of the Class, and the covenant of good faith and fair dealing implied into all of these contracts, by charging and collecting sales tax on orders in the Tax-Free States, contrary to governing law in those States.

115.    As a result, DoorDash overcharged Plaintiffs and each member of the Class in the amounts of sales tax DoorDash collected from Plaintiffs and each member of the Class.

116.    Plaintiffs and the other members of the Class have been damaged in amounts to be proven at trial.

117.     Plaintiffs and the other members of the Class seek compensatory damages to remedy DoorDash's breach of contract and of the implied covenant of good faith and fair dealing.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class and Subclasses, respectfully request the following relief:

a.       That this Court certify this action as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4), and appoint Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

b.       That this Court enter judgment in favor of Plaintiffs and the other members of the Class and Subclasses, and against DoorDash under the legal theories alleged herein;

c.       That DoorDash's wrongful conduct alleged herein be adjudged and declared to violate law as asserted herein, and that the Court issue an order enjoining the acts and practices adjudged and declared unlawful;

d.       That Plaintiffs and each of the other members of the Class and Subclasses be awarded their actual damages or, in the alternative where permitted by law, statutory damages where such damages exceed actual damages, with all damages (whether actual damages or statutory damages) trebled where available by law;

e.       That Plaintiffs and each of the other members of the Class and Subclasses be awarded punitive damages sufficient to deter DoorDash and other companies from engaging in similar misconduct in the future, and to punish DoorDash for its knowing, willful, and/or recklessly indifferent violations of law;

f.      That Plaintiffs and each of the other members of the Class and Subclasses be awarded such additional or other statutory damages or penalties, civil penalties, or other monetary relief permitted by law;

g.      That Plaintiffs and each of the other members of the Class and Subclasses be awarded pre- and post-judgment interest, as permitted by law;

h.      That Plaintiffs and each of the other members of the Class and Subclasses recover their costs of suit and attorneys' fees and expenses as permitted by law;

i.      That Plaintiffs and each of the other members of the Class and Subclasses be awarded such other and further relief as the nature of the case may require or as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs respectfully request a trial by jury on all claims so triable.

Dated: April 5, 2019                         Respectfully submitted,

                                             By:*/s/ Kyle J. McGee*
                                             GRANT & EISENHOFER P.A.
                                             Kyle J. McGee (DE Bar No. 5558)
                                             123 Justison Street
                                             Wilmington, Delaware  19801
                                             Tel: 302-622-7000
                                             Fax: 302-622-7100
                                             kmcgee@gelaw.com

                                             *Attorneys for Plaintiffs and the Proposed*
                                             *Class and Subclasses*