# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASHLEY MOORE, et al.,<br><br>                Plaintiffs,<br><br>        v.<br><br>DOORDASH, INC.,<br><br>                Defendant. | C.A. No. 1:19-cv-00636-MN<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS**

Dated: June 10, 2019

                                                    **GRANT & EISENHOFER P.A.**
                                                    Kyle J. McGee (DE Bar No. 5558)
                                                    123 Justison Street
                                                    Wilmington, Delaware  19801
                                                    Tel: 302-622-7000
                                                    Fax: 302-622-7100
                                                    kmcgee@gelaw.com

                                                    *Attorneys for Plaintiffs and the Proposed Class and Subclasses*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................... 1

LEGAL STANDARD ................................................................................................................. 2

ARGUMENT ............................................................................................................................... 3

    I.   Enforcement Of DoorDash's Arbitration And Class Waiver Provision Would Be Inconsistent With Third Circuit Precedent. .......................................................... 3

    II.  DoorDash's Authorities Pertain To Disputes With Drivers, Not Customers. ...... 5

    III. Browsewrap Agreements Are Unenforceable Under Delaware Law ................... 7

    IV. Even If DoorDash's Terms Are Considered "Sign-In-Wrap," They Are Unenforceable Under The Circumstances Of This Case. ......................................... 9

CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Applebaum v. Lyft, Inc.*,
   263 F. Supp. 3d 454 (S.D.N.Y. 2017)......................................................................................14

*Berkson v. Gogo LLC*,
   97 F. Supp. 3d 359 (E.D.N.Y. 2015) ......................................................................................14

*Cabela's LLC v. Wellman*,
   2018 WL 5309954 (Del. Ch. Oct. 26, 2018) ....................................................................11, 12

*Carlson v. Hallinan*,
   925 A.2d 506 (Del. Ch. 2006)..................................................................................................12

*Crawford v. Beachbody, LLC*,
   2014 WL 6606563 (S.D. Cal. Nov. 4, 2014) ..........................................................................13

*DoorDash, Inc. v. Marciano*,
   No. 2015-1-CV-287843 (Santa Clara Super. Ct. Mar. 21, 2016) .............................................9

*Edwards v. DoorDash, Inc.*,
   2017 WL 5514302 (S.D. Tex. Oct. 18, 2017)..........................................................................9

*Farran v. DoorDash, Inc.*,
   No. 30-2018-00992677-CU-OE-CXC (O.C. Super. Ct. Mar. 7, 2019).....................................9

*Hough Assocs., Inc. v. Hill*,
   2007 WL 148751 (Del. Ch. Jan. 17, 2007)............................................................................12

*James v. Global TelLink Corp.*,
   852 F.3d 262 (3d Cir. 2017).............................................................................................6, 7, 8

*Lowe v. DoorDash, Inc.*,
   No. BC715425 (L.A. Super. Ct. Apr. 18, 2019)....................................................................10

*Lyons v. DoorDash, Inc.*,
   No. 2:17-cv-1496 (C.D. Cal. May 19, 2017) .........................................................................10

*Magana v. DoorDash, Inc.*,
   343 F. Supp. 3d 891 (N.D. Cal. 2018) ........................................................................9, 10, 12

*Marciano v. DoorDash, Inc.*,
   No. CGC-18-567869 (S.F. Super. Ct. Dec. 7, 2018) ...............................................................9

*Marko v. DoorDash, Inc.*,
 No. BC659841 (L.A. Super. Ct. May 29, 2018) ....................................................................10

*Newell Rubbermaid Inc. v. Storm*,
 2014 WL 1266827 (Del. Ch. Mar. 27, 2014).........................................................................11

*Selden v. Airbnb, Inc.*,
 2016 WL 6476934 (D.D.C. Nov. 1, 2016) ............................................................................13

*Specht v. Netscape Commc'ns Corp.*,
 306 F.3d 17 (2d Cir. 2002).....................................................................................................15

*Starke v. Gilt Groupe, Inc.*,
 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014)........................................................................13

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 3 ........................................................................................6, 7

Plaintiffs Ashley Moore and Greg Safian ("Plaintiffs") respectfully submit their response in opposition to defendant DoorDash, Inc.'s ("Defendant" or "DoorDash") motion to compel arbitration and dismiss ("Mot.") (D.I. 6).

## INTRODUCTION

DoorDash sidesteps Third Circuit precedent and Delaware law in a faulty attempt to compel Plaintiffs to arbitrate a suit they never agreed to arbitrate. Despite Plaintiffs' complaint putting DoorDash directly on notice of the fact that its decision to bury an arbitration and class waiver provision in its terms of service, while failing to require users to review those terms or even indicate that they have in fact reviewed them, renders the provision unenforceable "browsewrap" under governing law, DoorDash submits a cut-and-paste defense of its arbitration clause. All of the courts purportedly enforcing DoorDash's arbitration clause (which are uniformly out of circuit) actually interpreted a different term in a different agreement involving DoorDash *drivers* who signed written contracts, not *customers* who merely used DoorDash's app. No court has yet passed on the adequacy of DoorDash's attempt to require *customers* to arbitrate their disputes. For the reasons articulated in the complaint and analyzed below, this Court should find that DoorDash has failed to establish an enforceable arbitration and class waiver agreement with customers under applicable law.

"Browsewrap" agreements treat user passivity as consent to be bound and require no affirmative act on the part of the user to trigger a provider's contractual performance. In the Third Circuit, arbitration and class waiver provisions that amount to browsewrap are not enforceable unless users were provided with a reasonably conspicuous notice of the existence of those provisions. Plaintiffs have alleged that DoorDash's terms of service, which contain an arbitration and class waiver provision, constitute browsewrap because (i) DoorDash does not

disclose the existence of the arbitration and class waiver provision anywhere other than the page on which the terms of service themselves appear, (ii) DoorDash does not require users to review the terms of service containing the arbitration and class waiver provision, and (iii) DoorDash does not require users to do anything to signify that they have reviewed the terms of service containing the arbitration and class waiver provision.

Each of these shortcomings could have been avoided or corrected with ease. For example, DoorDash could have stated that the terms of service contain an arbitration and class waiver provision on the "sign up" page users see when they first visit the website or open the mobile app; prevented users from using the service until they have scrolled through a window containing the full terms; or inserted a checkbox allowing users to indicate that they have read the full terms. Any of these actions would have taken DoorDash's terms of service out of the category of unenforceable "browsewrap" and into the category of enforceable "clickwrap." But DoorDash did not implement these easy corrections. Consequently, DoorDash did not create an enforceable agreement requiring Plaintiffs to arbitrate any disputes.

DoorDash acted in blatant violation of law in collecting sales tax from Plaintiffs, who are Delaware residents. It remitted none of the sales-tax funds it collected to the State of Delaware. Now, as it gears up for its next round of private equity financing, it seeks to avoid publicity concerning its misdeeds by pushing consumers out of the courts and into closed-door proceedings—all on the basis of defective terms of service to which Plaintiffs never assented. DoorDash's motion should be denied.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, requires district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable

arbitration agreement. *James v. Global TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017). "'Arbitration is a matter of contract between the parties and a judicial mandate to arbitrate must be predicated upon an agreement to that effect.'" *Id.* (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). "'[T]he FAA does not require parties to arbitrate when they have not agreed to do so.'" *Id.* (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 478 (1989)). As arbitration is a matter of contract, state contract law applies in deciding whether a valid and enforceable arbitration agreement exists. *Id.*

## ARGUMENT

### I. ENFORCEMENT OF DOORDASH'S ARBITRATION AND CLASS WAIVER PROVISION WOULD BE INCONSISTENT WITH THIRD CIRCUIT PRECEDENT.

DoorDash conspicuously avoids citing any Third Circuit authority concerning the enforceability of arbitration and class waiver agreements in its opening brief. That is because, in *James*, the Third Circuit ruled that, where the user of a service had neither actual nor constructive notice of the existence of an arbitration and class waiver provision in a terms-of-service policy document, the service provider could not compel arbitration. 852 F.3d at 267-68. There, the provider notified users that their use of the service would be governed by certain terms, but failed to disclose that such terms included an arbitration and class waiver provision. *Id.* at 266 (observing that users were "repeatedly informed that their accounts were governed by [defendant's] terms of use"). Disclosure of the mere existence of terms of service, without more, is insufficient to establish an enforceable arbitration and class waiver term. *Id.* Instead, the disclosure must state that such terms include arbitration and class waiver provisions, even if the actual content of those provisions is only disclosed in the full terms of service. *Id.*

In this case, DoorDash—like the defendant in *James*—can point only to its disclosure of the existence of a terms-of-service policy that purportedly governs use of the service. Here, like

there, "users were not required to visit the website [containing the actual terms] or demonstrate acceptance of the terms of use through any affirmative act." *Id.* This fact distinguishes DoorDash's purported arbitration and class waiver provisions from "clickwrap" terms, which are generally enforceable, and renders them "browsewrap" terms, which are generally unenforceable in the Third Circuit. As the Court explained:

> In browsewrap agreements, a company's terms and conditions are generally posted on a website via hyperlink at the bottom of the screen. Unlike online agreements where users must click on an acceptance after being presented with terms and conditions (known as 'clickwrap' agreements), browsewrap agreements do not require users to expressly manifest assent.

*Id.* at 267 (citing *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 (2d Cir. 2016)). Fully consistent with this description, DoorDash's terms are hyperlinked at the bottom of one screen— the account creation/sign-up splash screen—in small text, and that text gives no indication whatsoever about the content of the terms. At no time does DoorDash present users with an opportunity to indicate that they have read or reviewed and accepted the terms, but merely assumes, from use of the service, that users have accepted the terms. This assumption is not credible or valid, in part because DoorDash's system is not designed to actually require users to view the content of the terms.

As in *James*, Plaintiffs had neither actual nor constructive notice of the arbitration and class waiver provisions in the terms-of-service policy purportedly governing their use of the service. Accordingly, Plaintiffs are not bound by those provisions and DoorDash cannot compel their enforcement. In addition, for this reason, DoorDash's claim that Plaintiffs failed to opt out of the arbitration clause (Mot. at 3-4) falls flat—Plaintiffs did not opt out because they did not know they were "in" any such "agreement" in the first place.

## II. DOORDASH'S AUTHORITIES PERTAIN TO DISPUTES WITH DRIVERS, NOT CUSTOMERS.

DoorDash leans heavily on the fact that other courts have consistently enforced its arbitration clauses, maintaining that a contrary outcome here would be "aberrant." Mot. at 5. DoorDash obscures the fact that every one of those cases involved a dispute with a driver or putative class of drivers, not food delivery service customers like Plaintiffs. This distinction matters because the factual circumstances in the driver cases are not at all similar to the factual circumstances in this case.

In *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891 (N.D. Cal. 2018), the court explained that the driver-plaintiff had "signed" a written agreement advising him on the "first page" that the agreement provides for binding arbitration of disputes. *Id.* at 895. The *Magana* plaintiff did not contest these points, but raised arguments under various exemptions pertaining to employment disputes and California law. *Id.* at 899-901. Accordingly, the case has no relevance here. The same is true of the other cited opinions. In *Edwards v. DoorDash, Inc.*, 2017 WL 5514302 (S.D. Tex. Oct. 18, 2017), a driver-plaintiff filed Fair Labor Standards Act claims pertaining to his employment classification. As in *Magana*, the court noted that the plaintiff-driver "signed" an independent contractor agreement containing an arbitration clause. *Id.* at *1.

Neither do DoorDash's unpublished state court opinions have any relevance here, because like *Magana* and *Edwards*, each of them was an employment dispute with a driver. *Farran v. DoorDash, Inc.*, No. 30-2018-00992677-CU-OE-CXC (O.C. Super. Ct. Mar. 7, 2019) (Ex. A to Lipshutz Decl.) (D.I. 8-1 at 1), was a dispute between DoorDash and a driver in which the driver-plaintiff asserted that certain employment disputes must be exempted from an arbitration agreement. D.I. 8-1 at 2-3. The same is true of *Marciano v. DoorDash, Inc.*, No. CGC-18-567869 (S.F. Super. Ct. Dec. 7, 2018) (D.I. 8-1 at 41), raising the question "whether

people who have worked with DoorDash, Inc. to deliver food from restaurants to consumers are independent contractors or employees." D.I. 8-1 at 42; *see also DoorDash, Inc. v. Marciano*, No. 2015-1-CV-287843 (Santa Clara Super. Ct. Mar. 21, 2016) (D.I. 8-1 at 49) (compelling arbitration of dispute with same driver filed with a labor board). In *Marko v. DoorDash, Inc.*, No. BC659841 (L.A. Super. Ct. May 29, 2018) (D.I. 8-1 at 46), the court similarly ordered driver-plaintiffs to "arbitrate their independent contractor status and claims for damages" under California employment law pursuant to the FAA. D.I. 8-1 at 47. In *Lyons v. DoorDash, Inc.*, No. 2:17-cv-1496 (C.D. Cal. May 19, 2017), DoorDash and driver-plaintiffs stipulated to arbitrate their disputes concerning employment status. In *Lowe v. DoorDash, Inc.*, No. BC715425 (L.A. Super. Ct. Apr. 18, 2019) (D.I. 8-1 at 69), another driver-initiated employment suit, the court denied DoorDash's motion to compel arbitration and temporarily stayed proceedings until August 29, 2019, pending further briefing on DoorDash's motion to stay.

DoorDash cannot point to a single case in which a court compelled arbitration of *customer* claims against it. Neither do any of the foregoing cases involve the same arbitration and class waiver provisions at issue here. Nor do they concern the question whether a DoorDash customer who merely creates a DoorDash account, without ever reading or reviewing or even being exposed to the fact that a remote set of terms contains a binding arbitration and class waiver provision, is automatically bound to individually arbitrate his or her claims.

Notably, in the driver cases, DoorDash appears to have presented drivers with written contracts for signature, on which the very first page disclosed that disputes must be arbitrated. *Magana*, 343 F. Supp. 3d at 895. That is not the case here. DoorDash did not present Plaintiffs or any other customers with any disclosure of the existence of the arbitration and class waiver provisions at issue here, and certainly did not present them with written contracts for their

signatures. Instead, it snuck those terms into an obscure part of the website and never made any mention of them anywhere other than in the terms themselves. It never required a signature (or e-signature) or any other manifestation of assent, such as requiring customers to click a checkbox or to scroll through the terms containing the provisions at issue before being allowed to use the service. Had it done so, the cases DoorDash cites might have some persuasive value. But they are utterly distinguishable based on the defective process DoorDash used with its customers, which renders the provisions unenforceable.

Accordingly, DoorDash's motion should be denied.

### III. BROWSEWRAP AGREEMENTS ARE UNENFORCEABLE UNDER DELAWARE LAW

DoorDash agrees that Delaware contract principles govern the Court's analysis of the threshold question whether "an agreement to arbitrate exists," which DoorDash has the burden of demonstrating. Mot. at 11 (citing *Swinford v. World Aviation Sys., Inc.*, 2007 WL 2565599, at *3 (Del. Ch. Aug. 29, 2007)). DoorDash cannot meet its burden.

DoorDash relies on Delaware state court opinions that offer it no support here. In *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827 (Del. Ch. Mar. 27, 2014), the Court of Chancery expressly observed that the agreements in dispute "were clickwrap agreements," and even distinguished clickwrap agreements from "browsewrap" agreements. *Id.* at *1, n.1 (noting that "so-called 'browsewrap' agreement[s] … typically 'involve[] a situation where notice on a website conditions use of the site upon compliance with certain terms or conditions, which may be included on the same page as the notice or accessible via a hyperlink'" (quoting *Van Tassell v. United Mktg. Gp., LLC*, 795 F. Supp. 2d 770, 790 (N.D. Ill. 2011)). The Court further explained that "browsewrap … often fails to provide adequate notice before assent," *id.* at *6 n.44, in enforcing the clickwrap agreements at issue. While the Court of Chancery was willing to

enforce a clickwrap agreement, it clearly noted that it would not enforce a browsewrap agreement under Delaware law.

DoorDash's reliance on *Cabela's LLC v. Wellman*, 2018 WL 5309954 (Del. Ch. Oct. 26, 2018), is puzzling. There, the Court of Chancery explained that "Delaware law allows digital acceptance of the terms of an agreement," *id.* at *7 n.86—an uncontroversial proposition with which Plaintiffs do not disagree. But in that case, the parties executed written intellectual property agreements, and indeed, the Court observed that they "electronically signed and accepted" such agreements. *Id.* Requiring an electronic signature is exactly what DoorDash did *not* do in this case. As noted above, DoorDash was plainly capable of taking that step—and in its written agreements with its drivers, it requires a signature, *see Magana*, 343 F. Supp. 3d at 895—but it declined to do so with respect to Plaintiffs and other customers.

Delaware courts enforce arbitration (and class waiver) provisions only insofar as those agreements arise out of the parties' freedom to contract. *See, e.g.*, *Hough Assocs., Inc. v. Hill*, 2007 WL 148751, at *11-13 (Del. Ch. Jan. 17, 2007) (observing that Delaware's policy concerning arbitration is "only a manifestation of our State's respect for contractual freedom," and declining to compel arbitration where proponent argued that arbitration clause in one agreement was "somehow silently intended to govern" disputes relating to different agreement). As DoorDash itself acknowledges, Delaware contract law requires a showing of "the intent of the parties to be bound by [the contract terms]." *Carlson v. Hallinan*, 925 A.2d 506, 524 (Del. Ch. 2006) (cited in Mot. at 11). Where the record indicates that a party lacked intent to arbitrate, Delaware courts will not enforce arbitration clauses. *Hough Assocs.*, 2007 WL 148751, at *13.

### IV. EVEN IF DOORDASH'S TERMS ARE CONSIDERED "SIGN-IN-WRAP," THEY ARE UNENFORCEABLE UNDER THE CIRCUMSTANCES OF THIS CASE.

Having failed to show how the use of browsewrap arbitration and class waiver provisions could be accepted under Delaware (and Third Circuit) law, DoorDash is left to argue that the Court should not consider those provisions as browsewrap at all, but rather as "sign-in-wrap." Mot. at 12. "Sign-in-wrap" is a hybrid browsewrap/clickwrap agreement. The problem is that, even if DoorDash's terms may be considered "sign-in-wrap," nothing in the present analysis would change.

DoorDash's primary authority here is *Selden v. Airbnb, Inc.*, 2016 WL 6476934 (D.D.C. Nov. 1, 2016), in which a district court found that a plaintiff assented to an arbitration provision contained in a terms-of-service document simply by registering with an online service provider. But *Selden* is inapposite here. There, the court emphasized that the "conspicuousness" of the terms was central to its determination. *Id.* at *4 (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 30 (2d Cir. 2002)). The court noted that "the size of the font, the possibility that other visual elements on the screen might obscure the 'terms and conditions' statement, and whether the user signed up for the agreement using a mobile device" would also impact the analysis. *Id.* After evaluating Airbnb's sign-up splash screen, the court found that Airbnb's disclosure that registering an account would bind users to its terms of service was "conspicuous" because "[i]t is placed in roughly the middle of the page … appears in dark font, in sharp contrast to the white background … clearly legible, appropriately sized, and unobscured by other visual elements." *Id.* at *5.

Importantly, *none of these factors hold true here*: in this case, DoorDash's disclosure is *inconspicuous* because it is buried at the bottom of the sign-up splash screen, in small font,

9

beneath much larger Google, Facebook, and DoorDash logos that serve to distract users, and/or possibly obscure the text if viewed on mobile devices. *See* Compl., ¶¶ 48-50.[1]

The analysis of "sign-in-wrap" provisions in *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015), is instructive. As that court explained, "[t]here are significant differences between a hyperlink available near a sign-in button, which is never subsequently mailed in hardcopy or softcopy to a consumer, as is the case here, and a hardcopy cruise ticket saying in all caps, 'SUBJECT TO CONDITIONS OF CONTRACT ON LAST PAGES IMPORTANT! PLEASE READ CONTRACT ON LAST PAGES 1, 2, 3.'" *Id.* at 403 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587 (1991)). The *Berskon* court ruled that, because the defendant failed to take steps to provide the actual terms containing the arbitration clause to the consumer, or to draw consumers' attention to the fact that the terms contain such a provision, the provision was unenforceable. The court expressly rejected the argument DoorDash makes here, *i.e.*, that "by clicking 'Sign In' [plaintiff] was agreeing to the company's 'terms of use.'" *Id.* The Court also noted that the terms of use "did not appear in a new screen or in a pop-up window on the same screen," and that the consumer "was not required to scroll through the contract of

---

[1] DoorDash also relies upon *Crawford v. Beachbody, LLC*, 2014 WL 6606563 (S.D. Cal. Nov. 4, 2014), which considered a sign-in-wrap forum-selection clause. Its reliance is misplaced. *First*, an arbitration/class waiver provision was not at issue. *Second*, there, the disclosure stated, "By clicking Place Order below, you are agreeing that you have read and understand the Beachbody Purchase Terms and Conditions, and Team Beachbody Terms and Conditions." *Id.* at *3. Here, however, DoorDash did not require consumers to read or understand its terms of service, or place consumers on notice that its terms of service contained rights-altering contractual provisions such as arbitration clauses. *Third*, the *Crawford* court did not consider the other factors identified by *Selden* pertaining to the conspicuousness of the disclosure, including its placement, font size, interference with other visual elements, and so on. Courts have distinguished this and similar authorities cited by DoorDash, such as *Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014), as inapposite where the disclosure of the terms is not conspicuous or is ambiguous. *See, e.g.*, *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 468, n.4 (S.D.N.Y. 2017) (finding notice of terms including arbitration provision were not reasonably available to Lyft users and thus not enforceable).

adhesion and its boilerplate terms to click 'accept' or 'I agree.'" *Id.* Accordingly, the Court denied the defendant's motion to compel arbitration. *Id.*

This Court should similarly deny DoorDash's motion. Even if the Court considers its arbitration and class waiver provisions as "sign-in-wrap" rather than "browsewrap," it remains the case that it is insufficiently conspicuous, and cannot be said to have put Plaintiffs on reasonable notice of the purported requirement to resolve disputes by individual arbitration.

## CONCLUSION

"Reasonably conspicuous notice of the existence of contract terms," such as a requirement to arbitrate disputes on an individual basis, "and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility." *Specht*, 306 F.3d at 35. DoorDash's motion to compel arbitration and dismiss this case should be denied for the reasons stated above.

Dated: June 10, 2019            Respectfully submitted,

*/s/ Kyle J. McGee*
**GRANT & EISENHOFER P.A.**
Kyle J. McGee (DE Bar No. 5558)
123 Justison Street
Wilmington, Delaware 19801
Tel: 302-622-7000
Fax: 302-622-7100
kmcgee@gelaw.com

*Attorneys for Plaintiffs and the Proposed Class and Subclasses*

**CERTIFICATE OF SERVICE**

    I, Kyle J. McGee, hereby certify that on June 10, 2019, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading upon all counsel of record.

                                             */s/ Kyle J. McGee*
                                             Kyle J. McGee (DE Bar No. 5558)